BLANCHE MENGEL, Appellee, v. GEORGE MENGEL, Appellant.

**Appeal:** CONCLUSIVENESS OF RECORD. It will be assumed on appeal
1 that papers and documents included in a transcript which have been duly certified by the judge and reporter are a part of the record, though not specially identified.

**Same.** The recital in the record on appeal that a party appeared in
2 person on the hearing of an application for the order appealed

from can not be contradicted by parol, but must stand until the record has been corrected in the district court; and where the order appealed from appears from the record to have been entered in the district court, and is properly in the proceedings of that court, it will be assumed that the application was heard by the court and not a judge thereof.

**Divorce:** ADDITIONAL SUIT MONEY: JURISDICTION. The application in this divorce case for additional suit money, and the affidavits in support thereof, are held to show such a changed situation since the previous order was made as to give the court jurisdiction to grant the new order.

**Same:** APPLICATION FOR SUIT MONEY: EVIDENCE. An application for additional suit money should be treated as a motion authorized by the statute for that purpose, and may be supported by affidavits to be treated as evidence on the hearing.

**Same:** TEMPORARY ALIMONY: SUBSEQUENT ALLOWANCE. An order for temporary alimony is not a final adjudication of the rights of the parties in that regard, but the court has power to make a subsequent additional allowance.

**Same:** ALLOWANCE OF SUIT MONEY. Suit money may be allowed for the purpose of resisting an appeal from an order for temporary alimony.

**Same:** JURISDICTION. A judge as such has no power to award temporary alimony; this power is limited to the court itself.

**Same:** ALLOWANCE OF SUIT MONEY. Suit money for the prosecution of an appeal from an order allowing temporary alimony can only be awarded by the appellate court; and an order of the district court allowing anything for this purpose is erroneous.

**Same:** ALLOWANCE OF ATTORNEYS' FEES. Where attorneys' services in a divorce action were rendered in reliance upon defendant's liability therefor, and were necessary to the plaintiff's prosecution or defense of her case, the fact that they had already been performed is no objection to an allowance therefor.

**Same.** The fact that there had been a number of cases involving the collection of suit money previously allowed, was sufficient authority for allowing additional attorney's fees.

**Same.** To justify the reversal of an order allowing suit money it must appear that the court was without jurisdiction, or that it abused its discretion in the amount of the allowance.

*Appeal from Scott District Court.*—HON. A. J. HOUSE, Judge.

MONDAY, NOVEMBER 18, 1912.

FROM an additional allowance to plaintiff of temporary alimony or suit money in a suit for divorce under the title above given, defendant appeals.—*Affirmed.*

*B. I. Salinger* and *George W. Scott,* for appellant.

*Sharon & Higgins,* for appellee.

DEEMER, J.—This case has had a checkered career, and the record now before us is incomplete and difficult to understand. We are advised that there is now before us another intermediate order in an original divorce case brought by plaintiff against her husband, George Mengel, which latter case has not as yet been tried, although it has been pending for many years, during which time there has been a prolonged controversy over many intermediate or collateral orders. One branch of the case reached us many years ago and was disposed of, so far as this court is concerned, by an opinion which will be found reported in 145 Iowa, 737. We are informed that that branch of the case is now pending on appeal to the Supreme Court of the United States, and doubtless should take judicial notice of that fact.

The matter now before us was initiated by plaintiff filing in the district court on March 8, 1909, the following application:

Comes now Blanche Mengel by her attorney, E. M. Sharon, and asks the court to order the defendant to pay the clerk of this court the sum of five hundred dollars to be applied as partial payment of the costs and attorney's fees incurred in this cause, and in support of this applica-

tion says: That this cause was commenced in March, 1907, and that she had retained E. M. Sharon of the firm of Sharon & Donegan as her attorney in the January proceeding. That the defendant has contested the case and sought to delay the termination thereof. That there have been twenty-eight different pleadings filed in this case in this court, and the trial of the plaintiff's cause for separate maintenance and defendant's cause to annul the marriage continued five times. That her attorney has been obliged to advance up to, the present date $32.70 for sheriff and clerks' cost in this cause. That the defendant commenced an independent action to enjoin the judgment of the Supreme Court affirming the order of this court ordering the defendant to pay the plaintiff $50 per month for her support, pending the disposition of the cause. That there have been three applications for an injunction on said allowance in this court, which were successfully contested by her attorney. That three appeals have been taken to the Supreme Court of Iowa; that one of said appeals was dismissed at time required to file abstract. One was affirmed on motion of plaintiff, and one is still pending wherein plaintiff's attorney has filed a brief and argument and an abstract of the record, the printing of which cost $21.80. That in all of these appeals there have been numerous motions, statements, affidavits, briefs, and arguments not printed, but which required much legal work. That defendant also notified plaintiff's attorney to go to Des Moines at a hearing on the application to Judge Sherwin, of the Supreme Court, for an injunction to restrain the execution of the judgment for $575 of the allowance for support made by this court, and her said attorney has received no repayment of his expenses, and has filed a motion to dissolve the injunction, with the answer of the plaintiff and affidavits of an officer or employee of the two banks in which it was alleged that plaintiff had funds; that such accounts were the accounts of Felicia Reuter, the daughter of plaintiff. That it is necessary for plaintiff to have funds to apply as part payment for the services of her attorney and the money expended in costs paid and payable before proceeding further in its prosecution and defense. That $50 is all the money hereto paid said E. M. Sharon on account of his services and disbursement in this cause, and the plaintiff

has no means of her own with which to pay him except as she obtains the same from her husband, who is liable for the same. That the appeal from the order allowing support money is an appeal from an interlocutory order of this court, and this court has jurisdiction to make the allowance herein asked for. Blanche Mengel, by E. M. Sharon, her attorney.

This application was duly verified by plaintiff's attorney.

On March 30, 1911, plaintiff also filed the following motion:

Comes now the plaintiff and moves the court for an order compelling the defendant to pay the clerk of this court $2,000 for attorney's fee and costs for expenses made necessary by litigation caused by the defendant and to enable the plaintiff to prosecute her said action in the court and the Supreme Court of the United States, and submits in aid of this motion affidavit and application filed herein about March 8, 1909, and affidavits submitted herein. Sharon & Higgins, Attorneys for Plaintiff.

With this was filed an affidavit by plaintiff's counsel, to which we shall hereinafter refer. Plaintiff also filed her own affidavit, to which reference will subsequently be made. We shall presently make such reference to the original affidavit as the record will warrant.

On April 5, 1911, defendant was served with the following notice:

State of Iowa, Scott County.
Notice of Hearing on Application for Allowance of Suit Money. Blanche Mengel, Plaintiff, v. George Mengel, Defendant. In the District Court of Said County. To the Above named Defendant: You are hereby notified that there is filed in the office of the clerk of the district court, in and for said county of Scott, state of Iowa, the application of the above named plaintiff, asking against you the allowance of $2,000 for suit money and attorney's fees in . the above-entitled cause, and that unless you appear and make defense thereto before Judge House, at the courthouse

in Davenport, in said county, on the 17th day of April, 1911, an allowance will be entered against you, and judgment rendered thereon.

Sharon & Higgins,
Attorneys for Plaintiff.

On May 3, 1911, a hearing was had on the second of the foregoing applications in point of time at the Scott county courthouse, and we find that the following record was made thereat: Testimony was introduced tending to show an agreement between counsel for the postponement of the hearing from the time fixed in the notice until May 3, 1911. On the part of defendant, one George Scott testified that he was an attorney of record for said defendant, and that he agreed to May 3d as the date for the hearing; but it is claimed that his appearance in the case was special, and that his agreement was not binding on defendant. As he was an attorney of record for the defendant, we think his agreement was binding. But, however this may be, the transcript to which we have been compelled to resort shows affirmatively that defendant appeared in person on the morning of May 3d, and the court ordered that the matter be taken up at 1 p. m. of said day. At that time plaintiff by her attorney introduced the following from the record in the original case: The appearance docket and fee book showing the filings in the original case of Mengel v. Mengel, and in a case entitled George Mengel v. Blanche Mengel and Louis Eckhardt, the issuance of a writ of attachment and a levy thereunder, and another case of the same title as the last one above mentioned being an action on injunction bond, and, as we understand it, the pages of an appearance docket showing the filings in another case of the same title. The original application for suit money was also introduced, and also the application filed March 8, 1909, which we have heretofore set out *in extenso.*

In support of the motion for allowance of suit money

filed March 30, 1911, plaintiff also introduced the affidavit of her attorney, from which we quote the following:

E. M. Sharon, being duly sworn, deposes and says, as supplemental to his affidavit filed herein March 8, 1909, that since March 5, 1909, he has paid out for plaintiff's expenses of suit in the sum of $61.38, and that he has been obliged to follow the dilatory appeals and reviews and rehearing instituted by defendant's counsel, and states that in addition to the matters set out in his former affidavit he has made an additional motion to dissolve the injunction granted by Judge Sherwin in February, 1908, which the Supreme Court sustained. That he made and had granted a motion for *procedendo* from the Supreme Court in the case of George Mengel against this plaintiff and the sheriff of this county, and had judgment in this court for the costs in that case. That he has commenced, and there is pending in this court, an action on the injunction bond in the above injunction case; that on March 29, 1910, said George Mengel, defendant herein, obtained from Judge Deemer, Chief Justice, an order allowing a writ of error in this case to the Supreme Court of Iowa for review of said case in the Supreme Court of the United States of America and allowing a supersedeas. The plaintiff herein applied for a modification of said order and for the allowance of attorney's fees for contesting said writ and an additional security on said supersedeas. Judge Deemer held that he did not have jurisdiction to allow attorney's fees, but did order 'said bond increased from $2,111 to $4,000. Said George Mengel failed to file the record in the Supreme Court at Washington, D. C., and in August, 1910, this plaintiff did have said record certified from the Supreme Court of Iowa on this plaintiff or her attorney filing the same—paying the costs of docketing the case, and employing counsel at Washington for that purpose, said writ of error was dismissed. That afterwards and about the 5th day of September, 1910, said George Mengel or his attorney again applied for writ of error, and again Judge Deemer granted the same and also ordered a supersedeas. Plaintiff's attorney, knowing that under the statutes and procedure in the United States courts a writ of error does not and can not be made to operate as a supersedeas unless said writ is allowed within sixty days, Sundays excluded,

from the rendition of the judgment to be reviewed, applied to Judge Deemer to have said supersedeas vacated, and supported said application with a brief. George Mengel's attorney contesting the matter, plaintiff did furnish at least two additional briefs which involved a study of the statutes and decisions of the United States and its courts. That after several months Judge Deemer refused to declare the supersdeas ineffective, but did in his final order limit its application to the particular judgment entered in the Supreme Court of Iowa, January 15, 1908. That plaintiff in error while he has complied with the rules of the United States Supreme Court and filed the records in that court prior to October 5, 1910, has not had such record printed within a reasonable time as required by said rules, and apparently intends to delay the disposition of said writ of error in that court so long as possible, and plaintiff nor her attorney have means with which to defend such suit in that court. That about June, 1910, plaintiff had issued a writ of execution on the amount due in this court on the order of August 1, 1907, for temporary support of plaintiff, which execution the defendant without notice induced Judge Jackson to recall; that such recall was canceled on plaintiff's application, but afterwards defendant in a separate suit obtained an injunction restraining execution of that judgment, and plaintiff has on file an answer and motion to dissolve. That the book charges for his services and disbursements in prosecuting this suit and defending the counter litigation of the defendant are already $1,916.25, and, while the sum is reasonable and just, plaintiff must abandon her suit and the relief which affiant believes she is entitled to unless she can meet the contentions of the defendant in the matter of the Supreme Court of the United States and in the various suits, injunctions, and supersedeas pending in this court. The plaintiff's attorney, the affiant, has not received any money or property from plaintiff nor from other persons for or on account of this suit or those growing out of it or the matters between plaintiff and defendant except $9.16 return cost paid clerk of United States Supreme Court, and affiant does not believe that plaintiff is able to advance him any money for his services or disbursements herein. E. M. Sharon.

And in the same connection plaintiff's own affidavit

bearing date March 24th, but filed with the motion of March 30th, reading as follows:

Blanche Mengel, being duly sworn, deposes and says that she is the plaintiff in the above-entitled cause. That she was obliged to give up her residence in Davenport temporarily in September, 1907, on the refusal of the defendant, her husband, to contribute to her support, and when defendant appealed from the order of Judge Bollinger compelling said George Mengel to pay her $50 per month. That the only money or property she had or controlled at that time was money in two Davenport banks which was the property and had been given to her daughter Felicia. That since August 1, 1907, she has received no money or property from any source except for her personal service and assistance from members of her own family. That she has kept her daughter in a boarding school in Kentucky. That she has not paid her attorney any money for his services or disbursements since the bringing of this suit except that he retained $50 of an allowance of $100 ordered by the court and paid by defendant in May or June, 1907, and that she has been unable to do so and now has no money or property from which she is able to make any such payments. Blanche Mengel.

In addition to this, plaintiff offered an additional affidavit made by her attorney and filed March 31, 1911, reading as follows:

E. M. Sharon, being duly sworn, deposes and says that he is one of the attorneys of the plaintiff and has been since the commencement of this suit. That on the trial of plaintiff's suit for separate maintenance, certified record of her marriage with defendant was put in evidence. That defendant's contention was that plaintiff was incompetent to contract marriage at the time. That the records of this cause show that the prior marriage of the plaintiff with Otto Reuter had been annulled on the ground that said Otto Reuter had a wife living from whom he had not been divorced at the time of his marriage to plaintiff. That at the close of that trial Judge Bollinger announced his finding that the marriage of plaintiff and defendant was legal and valid, and that the evidence showed him to be worth

$50,000; defendant not having contradicted plaintiff's evidence to that effect, and afterwards in open court, after plaintiff had filed her amendment, asking for a divorce. Defendant's attorneys offered to withdraw their cross-petition attacking the validity of the marriage between the parties thereto, and the reason that it was not withdrawn was plaintiff's attorneys refused to consent thereto. That the evidence taken on the trial of this cause has been transcribed, and the cost thereof, $300 or thereabouts, has been taxed as costs in this cause, but such transcript is in the possession of defendant or his attorneys. That said transcript of the evidence is referred to in support of this motion to show the legality of plaintiff's marriage and her right to divorce in this action. That affiant further says that this action was commenced and is prosecuted in good faith by him as an attorney at law. E. M. Sharon.

The papers filed in the several cases noticed in the appearance docket were also introduced. And also a decree of this Court rendered January 23, 1908, which concluded as follows:

Now, therefore, it is adjudged and decreed that the judgment of the said district court be affirmed in all particulars, and that the appellee, Blanche Mengel, have and recover of George Mengel the sum of $500 and 15 percent of said principal sum, with interest and costs, and judgment is hereby entered in favor of Blanche Mengel and against George Mengel and Henry Jaeger for $575, with interest thereon from date at the rate of 6 percent per annum, and $25 for costs of this appeal and accrued costs, and that general execution issue from this court to the sheriff of Scott county for the collection thereof. [Signed] Scott M. Ladd, Chief Justice.

Also a subsequent order entered on March 10, 1908, reading as follows:

The above-entitled cause came on for hearing on the motion of the appellee for judgment in favor of the appellee and against the appellant and the surety on his appeal bond, and the court, having considered the statements and arguments in favor of said motion, filed for the appellee by

Sharon & Donegan, her attorneys, and those in resistance by Ruyman & Ruyman and Sallinger, Scott & Theophilus for the appellant, and the court, being fully advised in the premises, finds that this court did on the —— day of January, 1908, affirm the order and judgment of the district court of Scott county, made and entered August 1, 1907, by which the appellant herein was ordered to pay the appellee herein the sum of $250 on or before August 5, 1907, and $50 per month on the first day of each month thereafter, until final judgment herein, and that this court did on the 23d day of January, 1908, enter judgment thereunder for the sum of $500, being the sum at that time due, with penalty and costs; and further find that there is now due on said order the sum of $100, being the payments due on February 1 and March 1, 1908, and that no remand of this appeal has been made or asked for by the appellee, and all the record pertaining to said matters having been certified to and filed in this court, now it is adjudged and decreed that the appellee, Blanche Mengel, have and recover of George Mengel, the appellant, and Henry Jaeger, surety on the appeal bond of appellant, the sum of $100, and judgment is hereby entered against said George Mengel and Henry Jaeger in the sum of $100 with interest thereon at the rate of 6 percent per annum and, costs and accrued costs taxed at $——, and that the clerk of this court issue under the seal thereof execution to the sheriff of Scott county, Iowa, for the collection thereof, and that this matter be continued until further order of this court.

The original order for temporary alimony is in the record, and it is as follows:

It is ordered that defendant pay to plaintiff for her support the sum of $50 per month from April 1, 1907; $250 of said money to be paid within five days from this day, and $50 on September 1, 1907, and $50 on the first day of each month thereafter until final judgment in this case or until otherwise ordered by the court. Defendant excepts. Jas. W. Bollinger, Judge.

This was entered on August 1, 1907. The record also shows an order of date February 12, 1908, overruling de-

fendant's motion to vacate the order of August 1st. There is also a showing of an appeal from an order denying defendant a temporary writ of injunction against the enforcement of the original order for temporary alimony. Also a copy of a resistance filed for defendant to a motion for a judgment in this court pursuant to the order of affirmance entered in January of the year 1908, and also a like resistance to a motion said to have been filed in September of the same year. A showing is also made of defendant's dismissal of the appeal taken by him from the order of the district court denying him a temporary writ of injunction against the enforcement of the order for temporary alimony. Included in the record is a supplemental opinion filed by this court in response to defendant's petition for rehearing on the appeal from the allowance of temporary alimony; also a copy of the original opinion filed March 12, 1909. The record also shows the allowance of an appeal from the decree of this court to the Supreme Court of the United States, and a dismissal of that appeal by the United States Supreme Court for failure to file and docket the case; this dismissal having been entered August 19, 1910. The record also contains a motion by plaintiff to vacate a supersedeas order entered by one of the justices of this court, with an argument thereon in print or typewriting; also a motion to modify the supersedeas order, for additional security, and for an allowance of additional attorney's fees. This motion was also addressed to the then chief justice of this court. The record of the proceedings in the district court in the original case is also presented by the record before us, and this shows the overruling of a demurrer filed by defendant and his insistence upon a trial of the main case, orders fixing a day therefor, and the release of some of the attached property. The record also shows the allowance of a second writ of error to the Supreme Court of the United States, of date September 3, 1910, together with an order for a supersedeas upon defend-

ant's filing a bond in the sum of $4,000. This is the en- tire record in the case, and it is needless to say it is in an extremely confused condition. On account of the nature of the abstracts we have been compelled to resort to the transcript, and from that we have made the necessary ex- cerpts and quotations. It is hard to extract a clear or satisfactory statement as to the nature of the controversy, but the trial court on this showing, and none other, made the following order:

This matter came on to be heard on the application of the plaintiff for the allowance of $2,000 suit money to pay in part costs and attorney fees incurred, and to defend and prosecute pending litigation. The plaintiff appeared by Sharon & Higgins, her attorneys, and the defendant ap- peared in person. And the court finds that jurisdiction of the parties and subject matter is complete, and the plaintiff has introduced in evidence affidavits and records in cases pending; and, the court, being fully advised in the premises, it is ordered and adjudged that defendant pay to the clerk of this court for the use of the plaintiff and her attorneys the sum of $800 as suit money to enable her to prosecute and defend the litigation involving her rights to a divorce from the defendant and the support money hereto granted her by this court, and on failure of defendant to so pay said sum forthwith that execution issue for the collection thereof. This allowance shall be in addition to, and shall not affect, the allowance made by this court August 1, 1907; and this allowance is made without prejudice of the rights of the plaintiff or her attorneys to recover from the defend- ant costs and attorney fees heretofore disbursed and ac- crued, as determined by the court on final determination of this cause, or sooner if the conditions and circumstances justify the same. The defendant excepts. A. J. House, Judge.

The appeal is from this last order, and many errors are assigned and reasons advanced why the order so made should be reversed.

I. While it is true that many of the papers and docu- ments to which we have referred are not specifically identi-

fied, they are all included in the transcript, which is duly
certified, and we must assume that they are
1. APPEAL: con-
  clusiveness      a part of the record in the case below, as
  of record.
they are certified to by both the judge and
the reporter.

It is contended that the court or judge making this
order had no jurisdiction, because if made by a judge he
had no jurisdiction, and if made by the court defendant
had no sufficient notice of the time set for
2. SAME.
hearing and did not appear. As to this it
appears that defendant did have notice of the hearing, but
this seems to have been postponed by consent of one of his
counsel of record. Aside from this, the record recites in
at least two places, and once in the final order, that the de-
fendant did appear in person. These recitations can not
be contradicted by parol, and until corrected in the district
court must stand as a verity. Again the final order seems
to have been entered by the district court and is properly
of record in the proceedings in that court. We must as-
sume, therefore, that the matter was heard before the dis-
trict court.

II.   It is argued that the court had no jurisdiction of
this last application for the reason that it shows no change
in the situation or circumstances of the parties since the
3. DIVORCE:        original order for temporary alimony was
  additional
  suit money:      made, and the application calls for nothing
  jurisdiction.    more than a review of the original order.
The present application is very informal in character; but,
taking all the papers together, we think it sufficiently ap-
pears that plaintiff's application was for additional suit
money due to change of situation since the original order
was made. The recitals in the applications themselves, to-
gether with the affidavits attached thereto, sufficiently show
the character thereof, and doubtless gave the court juris-
diction.

The application should be treated as a motion, and it

is expressly provided by section 3833 of the Code that mo-

**4. SAME: application for suit money: evidence.** tions may be supported by affidavit, and such affidavits may be considered as testimony upon the hearing. That such an application should be by motion is expressly held in *Simpson v. Simpson,* 91 Iowa, 235; *Finn v. Finn,* 62 Iowa, 482.

Aside from this, however, the court has power to make subsequent charges in an order for temporary alimony. In *Clyde v. Peavy,* 74 Iowa, 47, we said: "Orders made for

**5. SAME: temporary alimony: subsequent allowance.** temporary alimony for the support of the wife and for attorney's fees, or suit money, as it is sometimes called, are not like ordinary money judgments. They can not, in the very nature of things, be regarded as final adjudications as to the rights of the parties. These orders are usually made to continue from term to term, for the reason that it is impossible to determine at the beginning what the necessities of the litigation may require. It may continue for years, and the court can not determine in advance that any named sum of money ought to be a full allowance for all purposes. This being the nature of the proceeding, no mere temporary order can be said to be a final adjudication. Additional allowances may be made from time to time."

III. Again it is argued, as on the former appeal, that the trial court, by reason of defects in the petition in the original divorce action, had no jurisdiction to make any order whatever. This point was ruled adversely to appellant on the former appeal, and in addition to this it is admitted that, before the last application was submitted, plaintiff amended her petition so as to cure the defect therein. There is nothing in this last proposition.

IV. Next it is argued that the allowance here made was unauthorized, because of the fact that it was for the protection of an order previously made for suit money, and that, if such an allowance should be made, there would be no end to the matter. In other words, that each order

is appealable, and if suit money were allowed to resist each appeal there would be an endless chain.

**6. SAME:**
**allowance of**
**suit money.**

We have no doubt of the inherent power in some court to make an allowance to a wife of suit money for the purpose of resisting an appeal taken by her husband from an award of temporary alimony. Such an appeal is authorized and a supersedeas may be given; and, if the wife can have no allowance of suit money to resist the appeal, she may be deprived of the very thing which was necessary to the prosecution of her suit. There ordinarily is an end to all things, even of a lawsuit, although no one yet has been able to see the end of this controversy which has proceeded no farther than an allowance to plaintiff of temporary alimony and suit money with which to prosecute her main action. True there have been a large number of other suits, but these have grown out of the original order for suit money which has not yet been complied with. Nelson, in his work on Divorce and Separation, at section 862, states the law on this subject as follows: "The weight of authority is that such order may be stayed by the execution of a suitable undertaking and the case may be reviewed without awaiting a final decree in the action for divorce. The undertaking must conform to the provisions of the Code, and should be in double the amount of the order for a reasonable time within which the appeal can be determined, and for costs. After the filing of such undertaking, the court may make another order compelling the husband to pay costs and attorney fees to enable the wife to resist the appeal." Although no cases are cited to the last proposition, we think it sound doctrine, and adopt it as the rule for this state.

V. Before passing to the next point in order, it should be stated in this connection that we agree with

**7. SAME:**
**jurisdiction.**

counsel in saying that a judge, as such, has no power to allow temporary alimony. The statute in express terms limits this power to the court

itself. Code, section 3177. But we have already found that the hearing was before the court, and the final order was entered by it. *Prosser v. Prosser,* 64 Iowa, 378; *Shaw v. McHenry,* 52 Iowa, 186.

VI. The next question in order is the power of the district court to allow suit money on an appeal to this court. According to our more recent holdings, the appellate tribunal is the only one to make such an allowance. *Shors v. Shors,* 133 Iowa, 22; *Lewis v. Lewis,* 138 Iowa, 593. This seems to be the rule in other jurisdictions. *Cralle v. Cralle,* 81 Va. 773; *Jenkins v. Jenkins,* 91 Ill. 167; *State v. Phillips,* 32 Fla. 403 (13 South. 920); *Goldsmith v. Goldsmith,* 6 Mich. 285; *Pleyte v. Pleyte,* 15 Colo. 125 (25 Pac. 25); *Coad v. Coad,* 40 Wis. 392. In so far as the order included anything for attorney's fees for the prosecution of an appeal here, it was erroneous under the authorities cited.

8. SAME: allowance of suit money.

VII. Again it is said that no allowance should be made for attorney's services already rendered. If these had been paid or plaintiff had any separate property with which to meet them, or if the services had been rendered on the strength of plaintiff's credit, there would be no doubt of appellant's position. *Bohnert v. Bohnert,* 91 Cal. 428 (27 Pac. 732); *Beadleston v. Beadleston,* 103 N. Y. 402 (8 N. E. 735); *McCarthy v. McCarthy,* 137 N. Y. 500 (33 N. E. 550). But where the services are rendered and not paid for, in reliance upon the husband's liability to pay, and were necessary to enable the wife to further prosecute or defend her case, it is no defense that they have already been performed. See *Bohnert v. Bohnert, supra.*

9. SAME: allowance of attorneys' fees.

VIII. Finally it is argued that there is no proper showing upon which to base an allowance of additional attorney's fees. If the affidavits filed by plaintiff and her attorney are to be considered, as we think they should be, for reasons already stated,

10. SAME.

they show enough, in our opinion, to justify the allowance made by the trial court.   That court had jurisdiction of the main case and power to make necessary allowances of suit money, save as by appeal some other court may be vested with exclusive jurisdiction in such matters.   In connection with the original order for temporary alimony, the record shows a number of cases to enforce and to defeat the collection of the allowance made.   These cases were in the district court of Scott county, and were proper to be taken into account in making the allowance of additional attorney's fees.   Again it seems that orders made by judges of this court in some of these collateral cases had to be met and set aside, and enough other work which the district court might properly consider was shown to relieve the district court from the charge of an abuse of discretion in making the allowance.

To justify the reversal of such an order it must be shown that the trial court had no power or authority to grant it; in other words, that it was without jurisdiction, or that it abused its discretion in the amount of the allowance.   *Campbell v. Campbell,* 73 Iowa, 483.   Neither of these facts is shown.

II. SAME.

This opinion is inexcusably long, and it may be that the case does not demand it.   But the record is such that we felt driven to a long opinion fully covering the matter, or else to a memorandum opinion affirming the order without more.

In view of the arguments presented, we adopted the former course, with the result that the order must be, and it is.—*Affirmed.*